All right, this is United States v. Dinkins, Mr. Booth. May it please the Court? South Carolina assault and battery with intent to kill is a violent felony under the ACCA's elements clause, and that's because the intent to kill element transforms the otherwise nonviolent assault and battery element into a crime that meets the ACCA's violent force requirement. If you kill somebody, you necessarily use violent force. If you intend to kill somebody, you necessarily intend to use violent force. So if you intend to use violent force and assault somebody at the same time, then you have necessarily either attempted, threatened, or used physical force against another person within the meaning of the ACCA. Both the Sixth Circuit and the First Circuit, in Edwards and in Raybon, have held that similar assault crimes that have aggravated intents, such as intent to do great bodily harm or assault with intent to murder, constitute violent felonies under the ACCA's elements clause. And this Court in Smith and their other courts of appeals have similarly concluded that other offenses which have aggravated intent or also aggravated elements, such as assault with a dangerous weapon, also meet the ACCA's elements clause. Do you view that the intent element relates to the words attempted or threatened force in the force clause? That is correct. The Edwards decision from the First Circuit specifically held that the state assault with intent to murder statute met both the attempt and the threatened clauses of the ACCA's element clause without differentiating. So you're saying that the intent to kill, even if there's not an actual death, the intent to kill lines up with the language of attempted or threatened force? That is correct. I would also indicate that in the Smith case, which is an unpublished decision from this Court, which involved a North Carolina malicious assault statute, which had both a dangerous weapon and an intent to kill element, this Court decided that that offense satisfied the ACCA's elements clause, but it also said that it did so under both the use, the threatened use, or attempted use. The courts of appeals have not generally distinguished between those three separate phrases in the ACCA's elements clause. We would submit that you can find that this particular offense does so under all three, but it certainly would meet the use, attempted use. I'm sorry, Judge Motz. Sorry, can you talk up just a little bit? I'm sorry, Judge Motz. I didn't mean to do that. Let me get this a little bit better. The courts of appeals haven't specifically distinguished between the three. Again, although the Smith use, attempted use, or threatened use of physical force. Again, this Court in Smith, in a decision that Judge Harris actually sat on at the time, didn't make a distinction between the three either. I would also like to indicate that in South Carolina, ABIC has been used exclusively in the context of crimes in which the defendant used a deadly weapon against the victim. There's no case in which South Carolina has construed ABIC to reach a mere offensive touching. In our view. What did you do with that really old case, the Glover case, where the defendant thought he was poisoning someone, but in fact was administering an extract that was not capable of causing serious physical harm? Yes, well that case, again, it is our contention that in light of Castleman and in light of all the other decisions that have come down from this Court, including Burns-Johnson, including Reed, and including Irby, those cases have repudiated the reasoning in Torres-McGill. I'm sorry, I was asking you a different question, not about the indirect use of force, and I thought the Court in that case actually thought there was a direct use of force because it was a baby, and so poison had to be forcibly administered. Yes, there is a South Carolina that deals with the actual use of force. There hasn't been a single case that we have found in South Carolina in which South Carolina has construed the assault and battery with intent to kill to meet a mere offensive touching case. I'm giving you one. That's all it was. They had sort of offensively touched the baby's mouth and administered what turned out to be a harmless extract. I know you must have a way of. Well, our position would be that if you did even that, that would constitute a threatening or attempted use of force. Attempted use of force is where you put it. In our particular view, the District Court made two essential errors in ruling that assault with intent to kill is not a violent felony. First, it did not use the transformative analysis. In fact, it did a divide-and-conquer analysis and simply said that while assault and battery is not violent and the intent to kill doesn't add anything to it, it didn't use the transformative analysis that all the other courts of appeals that have considered the issue have used. It also concluded that it was bound by this Court's previous decision in Hemingway, which held that Abhan, which was an aggravated assault offense, did not meet the ACCA's elements clause or requirement. But the difference between Abhan and the difference between this case is that the Abhan, the aggravating element there didn't necessarily have to be committed by violence at all. It could be committed by disparity in age. It could be committed by inflicting shame or disgrace on the victim. And so there were nonviolent ways in which the aggravating element could be met in that case. Here, in direct contrast, the specific intent to kill is always violent. That concludes my presentation. Do you have no further questions? Very quick question, just so I'm clear. Your position, right, is that it's an element of the South Carolina statute that there is an intent to do serious bodily harm, recklessness is not sufficient? It is our position that this is not a reckless crime, because it does have intent to kill or grievous bodily harm, which sort of corresponds with the common law definition of malice of forethought. With the mens rea of the matter, I thought the Wazin case said that use does require some volitional element, but it's indifferent as to whether that volitional element would be intention, knowledge, recklessness, as long as it wasn't negligence. That is correct, Judge Walters. Our position would be that even if a case could be committed by recklessness only, we would contend in an inappropriate case that that would also, a reckless offense, would be the ACCA's elements clause, but you don't have to reach it here. Doesn't Wazin address itself to that? Well, it did so in the context of a different statute, and it specifically said that it was not addressing the ACCA's elements clause. Nevertheless, the Sixth Circuit in Verveeb, which I've mentioned in my 28-J letter, has mentioned there are about four circuit courts of appeals since Wazin that have held that the Wazin recklessness analysis applies both to the elements clause under the ACCA or to the similarly situated guidelines crime of violence force. But your position is we don't have to hold that here, correct? No. Our position here is that this is assault with intent to kill. It's not assault with intent to create a risk that's likely to cause death. This is an intent crime, not a recklessness crime. All right. Thank you. We're happy to hear from you, Ms. Albrow. Thank you, sir. May it please the Court, I'm Kimberly Albrow here on behalf of the appellee, Deon Dinkins. What the government asked this court to do in this case is flawed. And the reason is is that they want you to apply this whole or entire offense analysis instead of the established elements analysis, which Judge Curry used in this case. It's the same analysis outlined in the Discamps case and Johnson 2010, and even in this court's cases like Aparicio-Soria. Essentially, the government is claiming that the mens rea portion of the statute can transfer the actus reas or the physical elements into ones that have violent physical force, where the acts alone do not contain this element of violent physical force that's required for a violent felony. As the government acknowledged in their brief, the actus reas elements alone are not violent physical force, and that's based on the Hemingway case. Why isn't the critical word here the word intent? Because it isn't. It's not some accidental or even reckless action. It's a question of a specific intent to kill. Actually, it's a general intent crime. It's not a specific intent crime. Well, an intent to kill. And the question I have is if you have that intent, we're not talking about carelessness or even recklessness. We're talking about intent. And so that denotes a degree of purposefulness in inflicting force, and it links up with the language of the force clause, which doesn't just address an actual physical impact but an attempted or threatened use of force. I mean, that seems to me the nub of it. Well, the Ralph King Anderson's jury charges, which Judge Curry cited in the opinion on this, defines malice, and it's defined as a general malignant recklessness. Malice can be established by words expressing hatred or ill will. So it doesn't have to involve this type of violent physical force or threatened use of force. Additionally, South Carolina, in a case cited in the brief, State v. Fennel, which is 531 S.E.2.D. 512, the state court explained what intent to kill means in terms of ABIC. And the defendant's menrea at the time he commits the criminal act, and this is a quote, is contained within the defendant's brain when he commits the act. That mental state never leaves the defendant's brain. It is not transferred from the defendant's brain to another person or place, unquote. So that's how South Carolina defines that. Spell out for me how that helps you. Because, again, there are these abhand elements which are not violent, and the mensrea, which is the only other element, is completely within the defendant's brain. Therefore, whatever is contained in the defendant's brain can't make the abhand elements more or less violent. It's all about his intent to kill, whether he, in his mind, the defendant, intends to kill someone. So that goes back to the same intent. As I read the cases, you have to come up with a case or a likely case in which a South Carolina court has interpreted this in the way that you suggest. And what is that case? Yes, Your Honor. The Stevenson v. State case. The defendant was actually charged with two counts of ABIC and two counts of resisting arrest. But he was only convicted of two counts of abhand and two counts of resisting arrest. The only difference in the charge and the conviction is the intent of malice. And the physical actions taken toward the police didn't change. And this was not one of these violent circumstances of aggravation that are described in abhand. This was a resistance to lawful authority case. So it is one of these other elements of circumstances of aggravation in abhand. So, for instance, the actions taken toward the police, he was charged with ABIC. And if, for some reason, this defendant had expressed that I'm not going back to jail, I would kill these cops before I go back to jail while he was resisting arrest, that would make the malice intent provable. In this case, the jury found that the malice intent was not proved, but it did not change any of the physical actions taken toward the police. Right. But that isn't – I was really believing you. So supposing you're correct on the intent, but that it's neutral, really, that it doesn't tell us that this is the crime of violence and doesn't tell us it isn't. It just is neutral. Okay? Right. So what South Carolina case tells us that this is a crime or isn't a crime of violence. That's your claim, right? Right. But most of the ABIC cases that I could find don't really give the facts at all. That's the problem. And I cannot cite you. I understand that the government has cited some cases with the most egregious facts. They cited the Subaru v. State case, which involved a collision with a police car. You have that very old case. Do you rely on it? Glover, yes, ma'am. And you heard what your colleague on the other side said about Glover. What do you have to say about that? Correct. I still think that the actual force taken against the baby's mouth is an abhand, and whether the person intended to kill that baby or not kill that baby doesn't change the amount of force used on the baby. Isn't the part, I mean, didn't the defendant in that case attempt to use deadly force? The defendant was wrong. The degree of force that he administered turned out not to be deadly, but he did attempt to use deadly force by way of poison, right? The attempt was made, but the force used wasn't the violent physical force that is defined under Johnson 2010. Well, if he had been successful, he would still say that? Well, I don't think, I mean, the government proceeded under the assumption that murder is automatically a violent felony. This panel may agree with that, but there is no case that has held that. There are other forms of second-degree murder and what have you that aren't before this panel, but that may or may not contain violent physical force. Okay, so let me ask you this question. This case is here on habeas, right? This isn't a direct appeal. It's a 2255, that's correct. Right, 2255. And so generally on habeas, we sort of give a nod to the government. It's harder to prove to get habeas relief than it is to get relief straight up for the defendant. You'd agree with me on that, right? Right. So how does that color in when we're not really sure that we have a case that really is a South Carolina case? Well, it helps you. And that's the only one that could help you? Well, I was going to go into the Subaru v. State case was the collision with the police car, and that was an Abbott case, but there was some question, this was a PCR, so it was kind of a State habeas case as well. But the actions wouldn't change. Again, these physical-type actions against the victim wouldn't change. It was all about the intent. I understand. Our standard of review changes. Maybe you've never argued a habeas case, but I had one just two days ago, and we were sort of on the, you know, dicing, and it was clear if this had been direct appeal, but it wasn't. And this is an ineffective assistance of counsel claim that the counsel failed to make this argument, sustained by the district court to be sure, but I'm not sure that there was a just on that basis alone that there was an ineffective assistance, if the law is so unclear on this. So maybe if I'm just out to lunch, you can tell me that. Well, I don't think that was the holding. I think because of the Johnson 2015 case, all of these cases came before the district court, and now the district court has issued an order. But they are ineffective assistance cases, right? I don't agree with that. I think the law changed, and, therefore, when the court held that it applied retroactively, the district court was. I thought it was an ineffective assistance claim. All right. You go ahead. I'll see if I can find it. Not to my knowledge, but if you find that in the record, then I will defer to you. But I just don't think this was an ineffective assistance. I think it was just straight. Counsel was charged with the state of the law at the time. I'm sorry? In an ineffective assistance of counsel context, counsel was charged with the state of the law at the time of the sentence. Right. And the state of the law was that this addict was a violent felony. Now on the 2255, when the Johnson 2015 case came about, he filed a 2255, and Mr. Dinkins had already filed 2255. So he got this court's permission to file the 2255. With respect to the South Carolina law, you've reached one rather old, ambiguous case. Wouldn't you have to show that this is pretty much in the mainstream of South Carolina decisional law to win your case? I mean, it can't be that you have 40 cases for one proposition and one case for your proposition. And you have the language, if you do have that one case, and then you have the language of the statute which seems to support the 40 cases. That's a pretty strong case. Well, I think it can't be a theoretical possibility, is the language. And I think with the Glover case and with the Stevenson case that I cited, and all the Abhan cases, because, again, if you look at it. But those are different statutes. Well, the Abhan is, the elements of the Abhan, it's a common law offense, and the Abic is a common law offense until it was abolished in 2010. And the Abhan elements, again, it's not just the violent circumstances of aggravation. You know, sometimes these debates, and everybody realizes that this is vastly, way over complicated. And sometimes these debates get somewhat abstruse. But when you take a step back and apply some common sense, can it really be? I mean, do any of us really think that an assault with an intent to kill is not a crime of violence? I mean, to state the proposition, I, with great respect to you, I think that adopting that position, it wouldn't pass the straight face test. People would, they would think we'd gone quite off the rails. And we're supposed to apply a certain common sense to this, and I think the Johnson decision, the original one, was concerned about assault and battery and a nominal touching. And then you think, my gosh, how far the law has traveled from Justice Scalia's concern of Johnson, I guess, about a nominal touching and just sort of offensive battery, to actually debating something like this. I do understand that some judges are of the view that you are, that you have to use a common sense approach. But the framework that we have is from the Supreme Court and from this Court's prior cases. And in this case, maybe not, maybe a similar statute in another case wouldn't be the same way. But this statute is ab hand with a malicious intent that's contained within the defendant's brain. And because ab hand can cover circumstances of aggravation that aren't violent, there is more than a theoretical possibility that this crime could be conducted in a way that's not violent. And because the United States Senate has set up this whole scheme of state predicates, we are compelled to go look and see what each state law requires, no matter what it's titled. I mean, at least under Maryland law, the titles don't mean anything at all. I mean, that's the first thing you have to know about Maryland law. And then you go from there. And so something that may sound extremely ugly and violent has in fact been prosecuted and the government has succeeded, the state has succeeded in getting a conviction on facts that are much less violent. And that's where we're looking now. Maybe the Supreme Court is going to re-decide that. But that was kind of, I feel, sort of what animated this whole thing. And the position we're left in. And I agree, Judge Motz. But I still, this was a habeas petition. No, it was a 20, there's no doubt. But the decision was in favor of Mr. Dinkins. Right. And honestly, I can't answer your question. I don't know what the standard is. I thought you were debating with me whether it was a habeas petition or not. No, no, no, no. I just don't think that ineffective assistance was part of the. Of her decision? I didn't see that in her opinion. Oh, that is part of the government's response. And it's all about ineffective assistance. Okay. Oh, in the case below where they said it was. Yes. Okay. Yes. It's the brief in front of the district court. But I agree with your understanding of what the analysis that we're stuck with. Mr. Booth and I discussed this before argument about how when one of these violent type cases come up, you have to read 40 state cases to figure out what's really going on. But maybe as another example, there's a South Carolina case that involved a man who followed a woman in a car and used a flashing light and had her pull over. And when he approached her car, she goes, what do you need? Why did you stop me? And he tried to reach in the car and grab her and said, well, I want you. And she sped off. He was convicted of abhand. But the point is, had this man been a serial killer or something along those lines. Was that under this statute? I'm sorry? Was that under this statute? It's under the abhand. Abhand's common law. So it's an earlier case where it was under the common law. Well, I mean, a lot of the cases that are being discussed are under abhand and a different statute. But I would say as a general matter, obviously, we want to inquire as to state law and whether it permits all kinds of convictions based on nonviolent conduct, in which case it would be overbroad in terms of a violent definition. But given the number of state cases on these crimes, just the number of cases is legion, it's easy enough to fish through the pile and to find one or maybe two cases that arguably permit a conviction on something less, on something that, again, arguably could be conceived as nonviolent. But don't cases like Duenas-Alvarez require us to apply a certain common sense to this and to not just sort of imagine or leap upon an outlier case and try to make that into a representative or a typical representative of what state law is? Well, I think I have the Diaz-Ibarra case from this court cited instead of the Duenas-Alvarez case. But the standard is whether the conduct criminalized by the statute or, in this case, the common law, including the most innocent conduct, qualifies as a crime of violence. And it has to be more than a theoretical possibility. So my position would be if there's one case that shows that Abbott can be committed without the violent physical force required by Johnson 2010, that that would satisfy the standard that's been set forth in the case law. Well, I'm just not sure how that squares with some of the things. The Supreme Court's actually been tightening up on the force clause and the crime of violence. But I'm just not sure how that particular view that you have of it, which is that one case can outweigh 40. I realize we have the proposition that you have to look at the minimal conduct necessary to convict. But the idea that one case, one ambiguous case, should outweigh 40 doesn't seem to me to be, seems to me to run the risk of mischaracterizing the actual state of state law. You can find in any area of law where there's frequent litigation, you can find an outlier. My last point would be, as I'm about to run out of time, that a lot of what the government did to make its case, because contrary to what the government's reply brief said, that Mr. Dinkins was trying to have you focus only on one element. Mr. Dinkins' position is not like the Harris case cited by the government. Mr. Dinkins' position is in line with Judge Curry's position, which is she looked at all of the elements. She just did not find that the ab-hand elements could become violent because of the malicious intent in the defendant's brain. And I would also like to say that the government used a lot of cases that involved a deadly weapon and compared this to murder. That's adding elements to ABIC that do not exist. So it's like comparing apples to oranges. You really can't compare all these dangerous weapon cases to ABIC. I understand that I agree with what my good colleague Judge Mott said about the title of a crime. You can put whatever title on a state crime you want, and that doesn't necessarily get us to the question. But in 163620, it isn't just the title. It says the assault of crime and battery with intent to kill. And sometimes maybe the title of a statute doesn't match up with the language. But in this case, the intent to kill is not just a matter of the title. It's a matter of text. And I don't understand. It's important to look at the case law, too. But that doesn't mean you cease to take the text as an aid. That doesn't mean that suddenly we get so immersed in the case law that we take leave of the actual text of the statute. Because it's the text of the statute that most often forms the basis of the jury instruction. So the text of the statute indicates a certain kind of typicality all its own, because that's what most jury instructions draw from, that statutory text. So to say that one arguable case outweighs the gravamen of state law and renders the textual mention of intent to kill irrelevant, it seems to me that that cannot be right. Well, I'm out of time. Would you like me to respond? Sure, I'll always give you the last word. Thank you. The jury instructions, like you said, this is a common law crime. The malicious intent, intent to kill, has been deemed the same thing. And I did refer to Ralph King Anderson's jury charges, because the South Carolina Supreme Court has removed the jury charges from their website, so we can't access this anymore. We use the Ralph King Anderson book. And, again, they do define malice in a way that can be words or expressing hatred or ill will. So, again, you have to take that in context with the actual actus regus. Thank you. Thank you. Mr. Booth, happy to hear from you. Thank you. In the Irby case, this court indicated that murder would be virtually always a violent felony under the force clause, saying that morally murder is the most reprehensible crime there is. The South Carolina courts have defined ABIC as comprising all of the elements of murder, except that the victim didn't die. So that what happens in ABIC, as a practical matter, is the defendant has done everything he possibly could to kill the victim, but he didn't succeed for some reason or another. And our position is, is if murder is a violent felony, the equivalent attempted murder is always going to be a violent felony as well. But the words of intent to kill are going to find their way into the jury room through an instruction that instructs that that's an element of the offense. That is correct, Judge Wilkinson, and typically because historically ABIC was defined as an assault with malice of forethought, and malice of forethought has evolved. I'm talking about the instructional elements in this offense. Intent to kill has got to be one of them. That is correct. The malice of forethought instruction that has typically been given in these types of offenses usually includes language that says intent to kill as well. I believe either the Cunard or the Sutton case, which involved the- Well, I'm not sure. I'm sorry. I'm not sure. Isn't that a distinction without a difference? Well, that's actually what the South Carolina courts said. They said the reason you don't have to give a separate specific intent to kill instruction because that was encompassed by the malice of forethought instruction. That's correct. So when you were talking about this, you said it usually was they were instructed this way. And I thought your colleague concluded with relying on some jury instructions that must have helped her position. So does that mean that sometimes the jury is not required to find this intent? No, I'm not saying that at all. Most of the cases- Well, you said most. You keep telling us most. But are there a group of cases in which that's not the case? When I say most judgments, that means of all the cases that I've read on this issue, I found only one or two cases in which the jury instructional issue was an issue before the appellate court. I do not know what instructions are given at the trial level, especially now that Abbott has been codified as a statutory offense. What instructions are given today, I simply don't know. The most was simply my recognition. I've read a lot of cases. Some involve jury instructions, but only a couple of them. The rest of them all involve sufficiency of the evidence. Your position continues to be that either intent to kill or its equivalent, like malice of forethought, is explicitly instructed. Yes. In the whole question about trying to find out what state law is, doesn't the text remain relevant and doesn't the gravamen of a bulk of the cases assist us most in defining what state law is? It can't be that a single outlier overrides the bulk of decisional law and the text of the statute as well. The answer to, I think, three questions is yes. The text is important. It is not necessarily conclusive, as Judge Motz pointed out. That is why this Court and the Supreme Court has required the government to come up with ways in which these cases are actually prosecuted to determine whether anyone or several of them would involve the minimum. It's also possible to look at the weight of case law in deciding what state law is, because that is what a trial judge is likely to do in the state of South Carolina. A trial judge in the state of South Carolina is going to look at the weight of case law in trying to find out a way to make his or her decision. That is correct, Judge Wilkinson. Sorry. You look at the weight of case law? So if there are 50 cases one way and 49 the other way, you go with the 50 cases? No. That is not the law. It may be the law someday, but it's not the law right now. I was answering Judge Wilkinson's question as a general matter. There would be circumstances in which the weight of the cases, all right, 75 one way and 25 the other way. Well, if we had a series of cases or even a small number of cases in which offensive touching was actually prosecuted under AVIC. Even if it wasn't the weight of the law. Mr. Booth, I want to make clear that my comment was not addressed to a 50-49 split or even to a 75-25 split. Well, it would be the weight of the authority. I have a question. I know we're a little over time, but I would really appreciate it if you would address Judge Motz's questions about the procedural posture of this case. This is an ineffective assistance case? I did not know that. That's what you say in your papers. This came up as one of them, but we did not believe that that was important in this case. Our position is that this particular offense is a violent felony under the Act as Elements Clause, and the fact that this came up under 2255 doesn't give us any particular advantage. I mean, yes, the defendant in bringing a 2255 has the burden of showing that there was an error in the case, as opposed to direct appeal where sometimes that is on a direct bill. The government's got the presumption to show beyond a reasonable doubt. 2255 is different in that respect. Our position in this particular case is that it's absolutely clear, whoever has the burden of proof, that this AVIC offense is a violent felony. That's not the position you took at pages 15, 16, and 17 in your brief before the district court. It's all about counsel is ineffective for failing to challenge Dinkins' status as an armed career criminal pursuant to 18 U.S.C. And then you say, then you'd address that. Dinkins claims this. Not so. I mean, don't we take the cases? You can't kind of switch gears when you come up in front of us, can you? Well, our position the The district court was to address that question. The district court, the question that the district court addressed was that this particular offense was not a violent felony under the elements clause. And our appeal from that adverse decision was that the district court was wrong. We have not made an issue of the fact that this case came up under court. If, however, Judge Motz, you were to be convinced that this is a tiebreaker and that would break the time and favor of the government, we would urge you to do that. You would take it. I understand. But you can't change the procedural posture of the case by what you choose to argue, right? I mean, you can't turn this into a direct appeal when it's only a 2255. That is correct, Judge Motz. But, again, because the district court ruled very narrowly that this was not I understand you think the district court was wrong, wrong, wrong in every possible respect. But you would take being wrong on a habeas claim. I agree with you, Judge. You're absolutely correct that in habeas that the conviction is presumed to be valid, so it is therefore the defendant's responsibility on 2255 to show that an error that was committed, I believe the statutory term is fundamental defect, and if it isn't, you can correct me on that. But, yes, it would be the defendant's burden to show that an error was committed at sentencing. The district court found that such an error was committed, and we think the district court was wrong. My colleague had a question. The district court granted relief on ineffective assistance or granted relief because the district court said, forget ineffective assistance, this just was not a predicate? I believe the district court ruled that this was not a predicate. Okay. Right. That's why the government's brief on appeal focused on that specific issue. Which is odd because I don't really see that that was in front of the district court. It is framing the posture of your argument on appeal because it's an appeal from that judgment, and that judgment was a straight application of the categorical approach. That is correct, and that's why our argument This was not categorically a crime of violence, and that was the district court's judgment. I don't think that's what you're appealing on this matter. Yes, that's why we basically, on appeal, the government's brief was limited to the question of whether or not this was a predicate offense under the act. If there are no further questions, we would ask this court to reverse the district court. Thank you. Thank you.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Pamela A. Harris